UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joseph Bruyette,                  :
        Petitioner,               :
                                  :
    v.                            :    File No. 1:04-CV-259
                                  :
Steven Gold, Commissioner,        :
Vermont Department of             :
Corrections,                      :
        Respondent.               :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 1, 14 and 16)

Petitioner Joseph Bruyette has filed a petition for

habeas corpus pursuant to 28 U.S.C. § 2254, in which he

challenges his state court convictions for burglary and

sexual assault.  (Paper 1).  Bruyette's arguments in

support of his petition include: (1) that being charged

with four different counts for the same incident amounted

to double jeopardy; (2) that his attorney failed to

obtain important evidence from the victim's mother; (3)

that the trial judge gave an improper diminished capacity

jury instruction; (4) that the trial judge incorporated

evidence into the jury instructions, thereby giving that

evidence extra weight; (5) that appellate counsel failed

to raise issues (1) through (4) on appeal; (6) that the

destruction of his victim's first statement to police

meant that Bruyette could not challenge the validity of

the warrant used to obtain a wire tap; (7) that the wire tap was of poor quality, and although it was not introduced into evidence the jury was allowed to take it into the jury room; (8) that trial and appellate counsel refused to order DNA testing; (9) that the police threatened his victim; (10) that the wire tap of his conversations in a car with the windows closed was illegal; and (11) that his request for a lawyer was introduced to the jury as evidence.

Bruyette also claims that counsel was ineffective, not only for the failure to uncover evidence and raise certain issues on appeal as noted above, but also for failure to make timely objections, failure to impeach the victim's credibility, and failure to have Bruyette psychologically evaluated. Bruyette further challenges his sentence, claiming that the pre-sentence investigation report was misleading. Finally, Bruyette has moved to amend his petition to add a claim that certain Vermont judges have not taken the appropriate oath under state law. (Paper 16). Also pending before the Court is Bruyette's renewed motion for appointment of counsel. (Paper 14).

The respondent has opposed Bruyette's petition. (Paper 12).  For the reasons set forth below, I recommend that the petition be DENIED.

## Factual Background

On April 28, 1987, Bruyette was charged with burglary of an occupied dwelling, kidnapping, and two counts of sexual assault.  The two sexual assault charges pertained to an alleged assault on the victim in the area of Hopkins Street, Rutland, and in Apartment 1 of 6 Hopkins Street, Rutland, respectively.  Shortly before trial, the State moved to amend the information to add the victim's name in each charge, and to add a third count of sexual assault for Bruyette's conduct after he left and then returned to the apartment on Hopkins Street.  The motions to amend were granted, and on October 28, 1988, a jury found Bruyette guilty of burglary of an occupied dwelling and three counts of sexual assault.  Judge Paul Hudson subsequently sentenced Bruyette to 15-25 years on the burglary conviction, and three consecutive sentences of 10-20 years for each conviction of sexual assault, for a total sentence of 45-85 years.

Represented by new counsel, Bruyette filed a timely appeal of his conviction with the Vermont Supreme Court. Bruyette presented four arguments on appeal:

(1) evidence of his prior consensual sexual activity with his girlfriend was erroneously admitted for the purpose of showing identity; (2) his motion to suppress his tape recorded conversations with his girlfriend should have been granted; (3) his conviction for a third sexual assault should be reversed because he was not properly arraigned on the charge, and because the charge was not supported by probable cause; and (4) certain physical evidence was illegally seized.

State v. Bruyette, 158 Vt. 21, 26 (1992). In a decision dated January 10, 1992, the Vermont Supreme Court affirmed the conviction. With respect to the first issue on appeal, the court held that the defendant's past sexual activity could be introduced to establish his identity. Id. at 30. On the question of suppressing the recorded conversations, the court concluded that the statements of Bruyette's girlfriend and a police officer, each of whom concluded independently that Bruyette might be a suspect, were sufficient to establish probable cause for the wire tap. Id. at 34.

As to the third issue, the court found that in adding a third count of sexual assault, the State had

4

merely divided what was originally the second sexual
assault charge into two counts.  Consequently, the new
charge did not add any new facts, and an arraignment was
not required.  Id. at 35.  The court further found that
although the third sexual assault count was not supported
by an affidavit, Bruyette had failed to make a timely
objection to the charge or request a probable cause
review, and that the claim was therefore waived.  Id. at
36.  Finally, the Vermont Supreme Court concluded that
certain physical evidence, retrieved for police by
Bruyette's girlfriend from a garage that she and Bruyette
had shared, did not require a warrant and need not have
been suppressed.  Id. at 36-37.

    In April, 1992, Bruyette filed a motion in the
Vermont District Court for reconsideration of his
sentence pursuant to 13 V.S.A. § 7042.  In support of his
argument for mitigation, Bruyette cited the fact that he
had left his victim and her son alive.  In a five-page
opinion, Judge Hudson denied the motion, referencing
Bruyette's progression of offenses since 1976 and his
refusal to take responsibility for his actions.  (Paper
12, Ex. 3 at 12-16).

On September 8, 1995, Bruyette filed a petition for post-conviction relief pursuant to 13 V.S.A. § 7131. (Paper 12, Ex. 3 at 18-19).  Counsel was appointed, and an effort was made to locate the files and transcripts of Bruyette's prior counsel with the goal of establishing a claim of ineffective assistance.  It was eventually discovered that the files and transcripts had been released by the Office of the Defender General to Bruyette's brother, and had allegedly been stolen.  After a status conference, the Rutland County Superior Court ruled that without the files there was no case, and that unless the files were located within 30 days, the case would be dismissed.  (Paper 12 at 7).  The Superior Court ultimately dismissed the matter "with prejudice, unless for good cause shown limited to reappearance of the file by 10/1/97."  Id.  The court later clarified its order to read, "Dismissed as to any allegations of ineffective assistance of or wrongdoing by counsel."  (Paper 12, Ex. 8 at 9).

Bruyette's attorney, Christopher Bove, subsequently filed a motion to extend the October 1, 1997 deadline on the ground that the files were believed to be in storage

and that retrieval was in process.  This motion was granted.  On October 31, 1997, Bove filed a second motion for extension of time, explaining that the files were not in storage, but were in the possession of a person who was not responding to his requests.  The State objected to the motion, and the motion was denied.  Nonetheless, on November 4, 1997, Bove submitted an affidavit stating that his investigator had obtained the files and transcripts and that he was "now prepared to go forward." (Paper 12, Ex. 5 at 2).  One week later, on November 11, 1997, Bove moved to withdraw as counsel.  The motion to withdraw was granted, and new counsel was appointed.

On April 12, 2000, Superior Court Judge Jenkins held a status conference.  Judge Jenkins noted that the ineffective assistance of counsel claims had been dismissed, and asked Bruyette's attorney if there were any other claims.  According to the respondent, Bruyette's counsel explained that alternative claims had been explored, including a claim that the victim had made a prior false allegation of sexual assault in Colorado. (Paper 12 at 8, Ex. 8 at 22).  Counsel also represented to the Court that he had reviewed the files and

7

transcripts, and that there did not appear to be any reasonable basis for a post-conviction relief claim. (Paper 12, Ex. 8 at 22).  Judge Jenkins therefore dismissed the petition in an order dated April 13, 2000. (Paper 12, Ex. 5 at 13).

On June 7, 2000, Bruyette filed an appeal with the Vermont Supreme Court.  The court dismissed the appeal as untimely.  Bruyette moved for reconsideration and for an extension of time, but the court dismissed his motion as moot.  Bruyette also sought to have the appeal reinstated, but his request was denied.  (Paper 12, Ex. 5 at 18-28).

Bruyette next filed a second petition for post-conviction relief in state court.  Counsel was appointed, and the court required a report from counsel regarding any claims not barred by 13 V.S.A. § 7134.[1]  In compliance with the Court's order, counsel submitted a letter dated December 5, 2002, stating:

> In docket number S0520-95RcC, Petitioner had asserted ineffectiveness of counsel by his trial lawyer.  Petitioner's claims included an

---

[1]   Title 13 V.S.A. § 7134 provides that "[t]he court is not required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

assertion that his trial lawyer had failed to
investigate whether the victim had made false
allegations of similar crimes in Colorado.
Petitioner's PCR lawyer at the April 2000
hearing and his previous PCR lawyer from the
same firm had separately reviewed the
transcripts, claims, and hired separate
investigators.  Both investigations failed to
uncover evidence that supported Petitioner's
claim that the victim had made prior false
allegations of similar crimes.  Petitioner's PCR
lawyer stated that he found no reasonable basis
for the claim of ineffective assistance of
counsel.  The attorney for the state made a
motion that the case be dismissed with
prejudice.  The court granted the motion and
ordered the case dismissed with prejudice.

(Paper 12, Ex. 7 at 11-12).  The State argued that the

petition should be dismissed under 13 V.S.A. § 7134, and

because Bruyette had failed to amend his petition or

provide a transcript.  On June 30, 2003, the state court,

citing § 7134, ruled that "The petition for post-

conviction relief is DISMISSED WITH PREJUDICE.  No

further petitions shall be accepted for filing."  (Paper

12, Ex. 8 at 21-23).

On July 1, 2003, Bruyette again appealed to the

Vermont Supreme Court.  After the Superior Court and the

Vermont Supreme Court denied his requests to proceed *in*

*forma pauperis* on appeal, the Supreme Court required

Bruyette to pay the filing fee and extended his time for

filing a transcript order.  After Bruyette failed to either pay the fee or file a transcript order, the Supreme Court issued an order dated September 12, 2003 stating that there was no appeal pending.  (Paper 12, Ex. 9 at 2).  Bruyette filed his § 2254 petition in this Court on October 4, 2004.

Discussion

I.  <u>Exhaustion</u>

The respondent characterizes Bruyette's current claims as "restated claims that he has made earlier but failed to perfect in Vermont state courts . . . ." (Paper 12 at 14).  The respondent also argues that Bruyette has failed to exhaust his state court remedies. (Paper 12 at 21).  Indeed, the first issue the Court must determine is whether Bruyette has exhausted his claims in state court.  <u>See</u> 28 U.S.C. § 2254(b)(1).

A federal court may not grant the habeas petition of a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to

10

protect the rights of the prisoner." Id.  To satisfy §
2254's exhaustion requirement, a petitioner must present
the substance of "the same federal constitutional
claim[s] that he now urges upon the federal courts,"
Turner v. Artuz, 262 F.3d 118, 123-24 (2d Cir. 2001), "to
the highest court in the pertinent state," Pesina v.
Johnson, 913 F.2d 53, 54 (2d Cir. 1990).

Bruyette presented four substantive claims to the
Vermont Supreme Court on direct appeal.  Despite
Bruyette's several attempts to appeal in state court,
those are the only four claims the state Supreme Court
has reviewed on the merits with respect to his
conviction.  Although those claims would be deemed
exhausted for purposes of federal habeas review, they are
not presented here.  Instead, Bruyette has brought a
series of new, unexhausted claims.

As set forth above, the four issues presented on
direct appeal related to: (1) the admission of evidence
with respect to Bruyette's prior sexual activity; (2)
Bruyette's argument for suppression of the tape recorded
conversation with his girlfriend; (3) the State's support
for the third charge of sexual assault; (4) and the

seizure of physical evidence.  The only claim addressed on direct appeal that resembles a claim brought here is the issue of the tape recorded conversation.  In his § 2254 petition, as on appeal, Bruyette is arguing that the wire tap was illegal.  Specifically, he contends that the victim's early statements to police were used to obtain the warrant for the wire tap, but that he was never given access to police notes of those statements.  This argument is clearly distinct from the one brought before the Vermont Supreme Court, which claimed "that certain information given by his girlfriend and set forth in the probable cause affidavit [used to obtain the wire tap] did not satisfy the standards of V. R. Cr. P. 41(c) on hearsay . . . ."  Bruyette, 158 Vt. at 32.  Bruyette also submitted a general challenge on direct appeal to the probable cause for the warrant.  Id.  There is no evidence, however, that his direct appeal included a claim that police failed to disclose notes of their initial conversations with the victim.

   "In order for the exhaustion requirement to be met, a petitioner must have presented to the state courts both the factual and the legal premises of the claim he

asserts in federal court." <u>Blazic v. Henderson</u>, 900 F.2d
534, 537 (2d Cir. 1990) (citations and internal
quotations omitted).  Consequently, a claim based upon a
novel factual "theory not previously presented to the
state courts" is not exhausted.  <u>Id.</u>  Here, Bruyette
challenged the validity of the wire tap on direct appeal,
and raises the same legal issue here.  His factual
theory, however, is entirely different from the one
presented to the Vermont Supreme Court.  Accordingly,
this Court should conclude that none of Bruyette's
current claims have been exhausted.

II.  <u>Review of Bruyette's Claims</u>

    A.  Procedurally Barred

When claims are raised in a federal habeas
proceeding but were never presented to a state court, a
federal court may find that there is an "absence of
available State corrective process" under §
2254(b)(1)(B)(i) if it is clear that the unexhausted
claims are procedurally barred by state law and, as such,
their presentation in state court would be futile.  In
such a case the habeas court theoretically has the power
to deem the claim exhausted.  <u>See</u> <u>Reyes v. Keane</u>, 118

13

F.3d 136, 139 (2d Cir. 1997).  However, when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claims procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991).

For a procedural bar to exist, it is necessary that "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotations omitted).  In such a case, a federal court will reach the merits of the claim and grant relief only if the petitioner can establish that (1) failure to consider the federal claim will result in a fundamental miscarriage of justice such as the conviction of an actually innocent person, or (2) there exists good cause for the procedural default and prejudice resulting therefrom.  Id. at 262.

Here, Bruyette is procedurally barred from bringing any further post-conviction relief petitions in state court.  The bar arises both out of the state statute with

14

respect to successive petitions, and the Superior Court's explicit statement that no further petitions will be accepted.[2]  Accordingly, this Court may deem his claims exhausted.  To achieve federal review, however, Bruyette must show either that the failure to review his claims will result in a fundamental miscarriage of justice, or show cause and prejudice for his default.  Id.

    B.  Fundamental Miscarriage of Justice

    The "fundamental miscarriage of justice" exception "is only available where the petitioner can supplement

_____

    [2]  The respondent argues that Bruyette may still seek relief under Vermont's habeas corpus statute, 12 V.S.A. §§ 3951 et seq.  The Superior Court's order did not specify whether the bar on further petitions pertained only to post-conviction relief petitions under 13 V.S.A. § 7131, or to all post-conviction proceedings.  However, since the inception of post-conviction relief under § 7131, the Vermont Supreme Court has referenced "post-conviction relief and habeas corpus . . . interchangeably."  Shuttle v. Patrissi, 158 Vt. 127, 130 n.1 (1992) (citing In re Stewart, 140 Vt. 351, 356 (1981)).  In Stewart, the Vermont Supreme Court referred to post-conviction relief under 13 V.S.A. § 7131 as "the primary mechanism for post-conviction relief . . . in the nature of habeas corpus."  140 Vt. at 355.  The court also noted that § 7131 was "patterned after the federal post-conviction relief statute, 28 U.S.C. § 2255."  Id. In light of this language, it appears that the State of Vermont now deems 13 V.S.A. § 7131 as the primary avenue for habeas corpus relief.  Accordingly, this Court should read the state court's decision barring Bruyette from filing any further post-conviction relief petitions as a bar on all petitions, including those brought under the state's habeas corpus statute.

his constitutional violation with 'a colorable showing of factual innocence'" in the form of newly adduced evidence of innocence.  <u>Washington v. Superintendent, Otisville Correctional Facility</u>, 1997 WL 178616, at *7 (S.D.N.Y. Apr. 11, 1997) (quoting <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991)); <u>see also</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995)).  Although Bruyette does not make a precise claim of innocence, he does contend that his victim was not credible.  This contention implies an argument either that the crime in question never took place, or that he was not the assailant.

While Bruyette's allegation suggests a claim of actual innocence, he offers no evidence to support his claim.  Indeed, after one direct appeal, two state court post-conviction proceedings and multiple lawyers, he has failed to assemble evidence to make a "colorable showing" of innocence.  <u>Id.</u>  Therefore, the Court should not review his defaulted claims on the ground that failure to do so would result in a fundamental miscarriage of justice.

C.  Cause

A petitioner may demonstrate cause for his default

16

by "showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . [or that] 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." Harris, 489 U.S. at 262 (citing Murry v. Carrier, 477 U.S. 478, 488 (1986)).  The record in this case shows that the primary cause for the procedural default on post-conviction review was Attorney Bove's inability to obtain the case file and transcripts.  Bove clearly contemplated bringing claims of ineffective assistance of counsel.  (Paper 12, Ex. 4 at 4).  To bring these claims, he needed to have access to trial counsel's notes and the trial transcripts.  He was unable to obtain these materials, however, due to a third party who was not responsive to his requests for the documents.  When Bove was finally able to inform the state court that he was on the verge of obtaining and reviewing the files, the court denied his motion for an extension of time.

The U.S. Supreme Court has held that cause may include "some objective factor external to the defense [which] impeded counsel's efforts to raise the claim in

state court." <u>McCleskey v. Zant</u>, 499 U.S. 467, 493
(1991) (citation omitted); <u>see also</u> <u>Washington v.</u>
<u>Superintendent, Otisville Correctional Facility</u>, 1997 WL
178616, at *6 (S.D.N.Y. Apr. 11, 1997) (cause may include
"outside interference that makes compliance with state
procedural rules impracticable").  In this case, the
"external factor" was a third party that, despite
counsel's efforts, cost Bruyette and Bove an opportunity
to present ineffective assistance of counsel claims in
state court.  Because the relevant case materials were
not "reasonably available to counsel" due to interference
from "an objective factor external to the defense," this
Court may conclude that cause exists for Bruyette's
failure to bring these claims in state court.

        D.  Prejudice

    While cause for the default may be present in this
case, Bruyette has failed to show prejudice resulting
from the default.  When analyzing prejudice, the Court
must first determine which claims would have been brought
in state court, and then determine whether the failure to
bring those claims was prejudicial.  As noted above, not
all of Bruyette's current claims were contemplated by

post-conviction review counsel.  The first attorney to begin articulating claims at post-conviction relief was Attorney Bove.  After Bove received input from Bruyette about the claims his client wished to bring in the post-conviction proceeding, Bove wrote to Bruyette that "the crux of your claim falls within the realm of ineffective assistance of counsel." (Paper 12, Ex. 4 at 4).  After Bruyette's ineffective assistance of counsel claims were procedurally barred for reasons discussed above, new post-conviction relief counsel was given an opportunity to supplement those claims, but found no basis for relief.  (Paper 12, Ex. 7 at 11-12).

Although Bruyette may have disagreed with his attorneys about which claims should be brought in the post-conviction review proceedings, the fact is that his attorneys reviewed the transcripts and conducted investigations, but could not identify any meritorious grounds for relief beyond the already-barred ineffective assistance claims.[3]  Therefore, this Court should focus

---

[3]  Because Bruyette had no constitutional right to post-conviction relief counsel, he cannot argue that his post-conviction attorneys were constitutionally ineffective for failure to bring additional claims.  <u>See Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991).

its prejudice analysis solely upon Bruyette's claims of
ineffective assistance of counsel.[4]

In order for Bruyette to have succeeded in state
court on his claims of ineffective assistance of counsel,
he would have needed to demonstrate "first 'that
counsel's performance fell below an objective standard of
reasonableness informed by prevailing professional norms'
and second, 'that counsel's deficient performance
prejudiced the defense.'"  In re Washington, 2003 VT 98,
¶ 8, 176 Vt. 529 (quoting In re Dunbar, 162 Vt. 209, 212
(1994)).  Prejudice results when "counsel's errors were
so serious as to deprive the defendant of a fair trial, a
trial whose result is reliable."  Strickland v.
Washington, 466 U.S. 668, 687 (1984).  In other words,
"[t]he defendant must show that there is a reasonable
probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been
different.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome."  Id.

---

[4]  This scope of this task is imprecise since no
substantive claims were ever presented in state court.
Therefore, in an abundance of caution, the Court will
presume that each of the ineffective assistance of
counsel claims set forth in Bruyette's § 2254 petition is
a claim that would have been brought in state court.

at 694; see also In re Plante, 171 Vt. 310, 313 (2000).

Bruyette's first claim of ineffective assistance of counsel charges that appellate counsel failed to raise the fact that he was charged with four counts for "the same incident and course of conduct" in violation of the Double Jeopardy Clause of the Fifth Amendment.  In State v. Fuller, 168 Vt. 396, 400 (1998), the Vermont Supreme Court "recognize[d] the rebuttable presumption that the crime of sexual assault is not a continuous offense and, therefore, each assault constitutes a separate and distinct offense."  (Citations omitted).

> In deciding whether an incident of sexual assault consists of one continuous assault or separate acts, we consider several factors, including: the elapsed time between successive parts of the defendant's conduct; whether the defendant's conduct occurred in more than one geographic location; whether an intervening event occurred between successive parts of the defendant's conduct; whether there was sufficient time for reflection between assaultive acts for the defendant to again commit himself.

Fuller, 168 Vt. at 400.

As set forth above, Bruyette was originally charged with burglary and two counts of sexual assault.  The first count of sexual assault pertained to an assault outside the victim's home, and the second an assault

21

inside her home.  The second charge was later divided
into two charges because Bruyette left the victim's home
between assaults.  Under the Fuller presumption, these
separate charges were justified due to the different
locations and/or times of each assault.  Consequently,
Bruyette's argument would likely have been unsuccessful,
and counsel was not constitutionally ineffective for
failure to raise it on appeal.

Bruyette next claims that defense counsel failed to
investigate the victim's mother. (Paper 1 at 4).  In his
§ 2254 petition, Bruyette claims that the victim's mother
"has favorable evidence that the victim lied and was
coerced by police in giving her statement ten days after
[the] alleged assault." Id.  In a subsequent filing,
Bruyette is less definitive about the mother's evidence.

> Correctional officer is the brother in law to
> the victim, the victim's mother spoke to him and
> his wife about a conversation she had with the
> victim – her daughter.  Defense counsel spoke to
> the correctional officer and was told that the
> mother had evidence for the defence [sic].  It
> may have to do with how the police got the
> victim to tell her story to be simular [sic]
> [to] that of Mr. Bruyette's ex-girlfriend and it
> may have to do with prior false alligations
> [sic].  But until the mother, brother-in-law and
> his wife are deposed, this evidence is maybe the
> defense key.

(Paper 13 at 7).

"Courts have viewed claims of ineffective assistance of counsel skeptically when the only evidence of the import of a missing witness' testimony is from the defendant." <u>Croney v. Scully</u>, 1988 WL 69766, at *2 (June 13, 1988) (citing <u>United States v. Cockrell</u>, 720 F.2d 1423, 1427 (5th Cir.), <u>cert.</u> <u>denied</u>, 467 U.S. 1251 (1984)).  Furthermore, Bruyette must show not only that the mother's alleged testimony would have been favorable, but also that she would have testified at trial.  <u>Id.</u> (citing <u>Alexander v. McCotter</u>, 775 F.2d 595, 602 (5th Cir. 1985)).  There is nothing in the current record to support Bruyette's contention that the victim's mother "may" have had information that would have been helpful in his defense.  Nor is there any suggestion that the mother would have testified against her daughter at trial.  Absent these showings, and given the speculative nature of Bruyette's argument, this Court should not conclude that counsel's alleged failure to procure the mother as a witness impacted the outcome of the trial.

Bruyette's next argument is that appellate counsel should have challenged the trial court's jury

instructions.  Specifically, Bruyette objects to the trial judge's diminished capacity instruction, claiming that diminished capacity was not a part of the defense, that defense counsel was never given an opportunity to present evidence on this issue, and that the instruction left the jury confused about the defense's theory of the case.  The respondent argues that the instruction was proper in light of testimony that Bruyette was using cocaine during the assaults.  As a result of this testimony, "the court charged the jury on the issue of diminished capacity for the *mens rea* for each crime charged."  (Paper 12 at 16).

The trial court instructed the jury as follows:

> If the evidence shows that the defendant was intoxicated, either by drugs or by alcohol or both, at the time the crimes were supposed to have been committed, you should consider his state of intoxication in determining whether he had the actual ability to achieve the state of mental responsibility necessary to form the specific intent required for each offense.

> Remember each offense must be proved separately and you should consider this issue separately as well.

> The evidence of intoxication may be sufficient to create a reasonable doubt as to whether the defendant was able to form this criminal intent. If, after you consider all the evidence, you have a reasonable doubt whether the defendant

> was capable of forming the specific intent
> required for some or all of the Counts, you must
> give him the benefit of that doubt and find that
> he did not have this intent and find him not
> guilty of that Count or Counts.

(Trial Tr. at 1180-81).  Bruyette's claim that this instruction prejudiced his trial is entirely without merit.  Bruyette contends that his defense was alibi, and that the addition of a diminished capacity instruction somehow weakened this defense.  There is no evidence, however, of jury confusion on this point.  Instead, it appears from the instruction that the Court merely offered the jury an alternative ground upon which to find Bruyette not guilty.  If anything, this instruction most likely increased Bruyette's chances of being acquitted. In any event, the claim is unsupported and should not be viewed as a ground for a finding of prejudice.

Bruyette also claims that the trial court included certain facts in the jury instructions, thereby giving those facts additional weight.  He does not, however, specify which portions of the jury instructions were objectionable.[5]  The claim is, therefore, unsupported

---

[5]  Bruyette initially claimed that he failed to file a transcript because his copy of the transcript was destroyed by prison fire/water damage, and that his family's copy was sent to an attorney "who lost it again

and, as such, does not show prejudice.

Bruyette's remaining claims of ineffective assistance of counsel are vague and equally unsupported. He makes a general claim that trial and appellate counsel refused to do independent DNA testing.  This claim is contradicted by his concession that he refused to offer non-testimonial evidence in the form of head and pubic hairs, considering it "a painful intrusion I refused to participate in." (Paper 13 at 9).  There is also no evidence to support a conclusion that DNA evidence would probably have changed the outcome at trial.

The purpose of DNA testing would have been to establish that Bruyette was not the assailant.  The testimony at trial on the issue of identity, however, was substantial.  Included in this testimony was evidence of sexual conduct with his victim that was "strikingly similar" to his prior conduct with his girlfriend, including the use of specific phrases, fantasies and drugs.  <u>Bruyette</u>, 158 Vt. at 25-27.  The evidence also

---

and the court made me give up my copy instead of finding
the lost one." (Paper 13 at 9).  Despite these claims of
lost and destroyed transcripts, Bruyette submitted a copy
of the jury instructions to the Court in correspondence
dated March 20, 2005.  (Paper 19).

included a matching physical description from the victim, and testimony that Bruyette tried to alter his appearance by shaving off his beard shortly after the attacks. (Trial Tr. at 1099-1100).  With no evidence that DNA testing would assist his case, and in light of the testimony with respect to identity presented at trial, the Court should not conclude that a failure to develop DNA evidence resulted in prejudice to the defense.

   Bruyette's final claims of ineffective assistance of counsel consist merely of short, conclusory statements with no facts in support: "Sixth Amendment - A. Ineffective assistance of counsel, failure to investigate, B. failure to object to issues, C. failure to raise an affirmative defense (did'nt [sic] question the victim's credibility and content of testimony), D. failure to have defendant evaluated psychologically." (Paper 1 at 6).  To the extent that these claims merely summarize previous arguments, such as counsel's "failure to investigate" potential testimony from the defendant's mother, those arguments are discussed above.  Claims of failure to challenge credibility or raise objections are, again, conclusory and lacking in factual support.

27

Finally, Bruyette's claim that counsel failed to have him undergo a psychological evaluation directly contradicts his prior argument that diminished capacity was not a part of the defense's case, and should not have been introduced at trial.  Accordingly, none of these final arguments support a finding of prejudice.

In sum, while the Court may deem Bruyette's ineffective assistance of counsel claims exhausted, he has failed to show that he was prejudiced by an inability to bring those claims in state court.  All other claims are procedurally barred in state court, and should be deemed procedurally barred here.  See Coleman, 501 U.S. at 735 n. 1.  Consequently, Bruyette's § 2254 petition should be DENIED.

III.  Motion to Amend Petition

Bruyette has moved for leave to amend his petition to bring a claim that certain state court judges did not take the appropriate oaths of office.  (Paper 16).  This claim, too, is unexhausted and procedurally barred, thereby rendering the proposed amendment futile.  The motion to amend (Paper 16) is, therefore, DENIED.

IV.  Renewed Motion for Appointment of Counsel

28

Finally, Bruyette has brought a renewed motion for appointment of counsel, citing the fact that access to legal materials has been limited since a September, 2005 prison riot. Bruyette also cites his lack of education, and his belief that he has never had a "full and fair chance to have his issues heard . . . ." (Paper 14 at 1-2). Because, for the reasons set forth above, Bruyette's unexhausted claims should not be reviewed by this Court, his motion for appointment of counsel (Paper 14) is DENIED.

## Conclusion

For the reasons set forth above, I recommend that Bruyette's petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Paper 1) be DENIED. I further DENY Bruyette's motion to amend his petition (Paper 16) and his motion for appointment of counsel (Paper 14).

Dated at Burlington, in the District of Vermont, this 13th day of May, 2005.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).